UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EASTMAN KODAK COMPANY, et al.,


                              Plaintiffs,

                                                    <u>DECISION AND ORDER</u>

                                                    05-CV-6384L

              v.

MARK S. CAMARATA, et al.,


                              Defendants.

_____


              This civil action is brought by Eastman Kodak Company ("Kodak") and three of its wholly-

owned subsidiaries, asserting claims under the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and related state-law claims, against various defendants.  The

gist of plaintiffs' claims is that defendants engaged in a scheme ("the scheme") in which they

conspired to inflate the tax assessments on certain real property owned by Kodak in the Town of

Greece, New York ("Greece"), in order to induce Kodak to hire appraisers–particularly defendant

John Nicolo and certain companies owned and controlled by him–to perform what would otherwise

have been unnecessary work, to reduce the artificially high assessments.  The appraisers then

"kicked back" a portion of the millions of dollars in appraisal fees received from Kodak to some of

the other defendants, including Charles A. Schwab, a former tax assessor for Greece, and two

insiders in Kodak's Corporate Tax Department, David N. Finnman and Mark S. Camarata, who were responsible for hiring the appraisers.

One of the defendants, Constance Roeder, who is also Nicolo's wife, has moved to dismiss the claims against her under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, Roeder's motion is granted in part and denied in part.

## BACKGROUND

The bulk of the allegations relating specifically to Roeder are set forth in Paragraph 497 (which is broken up into numerous subparagraphs) of the amended complaint.[1]  Many of these allegations relate to alleged payments to Roeder by Nicolo of funds that had been paid to Nicolo's business entities by Kodak, at the direction of some of the coconspirators who worked at Kodak.

For example, the complaint alleges that on November 5, 2002, Camarata directed the payment of $156,000 from Kodak to American Valuation Services, Inc. ("AVS"), which was owned and controlled by Nicolo, in connection with the appraisal services relating to an industrial park

---

[1]Roeder does not appear to dispute that the fact that the other defendants have all answered the complaint did not preclude Kodak from amending the complaint as of right with respect to Roeder, who has moved to dismiss but has not yet answered the complaint.  *See W.B. David & Co., Inc. v. De Beers Centenary AG*, No. 04 Civ. 5203, 2005 WL 3704690, at *2 (S.D.N.Y. Sept. 2, 2005) ("Plaintiff may, as a matter of right, amend its Complaint as to the ... Defendants who have not yet answered"); *Federal Home Loan Mortg. Corp. v. Ahuja Realty Corp.*, 90 Civ. 3658(MBM), 1991 U.S. Dist. LEXIS 10607, at *8 (S.D.N.Y. Aug. 1, 1991) ("a plaintiff may amend its complaint as of right in order to assert a claim against a non-answering defendant, even if other defendants have answered"); *see also Barbara v. New York Stock Exch.*, Inc., 99 F.3d 49, 56 (2d Cir. 1996) (motion to dismiss is not a "responsive pleading" for purposes of Rule 15(a)).  Accordingly, all future references to the complaint will be understood to refer to the amended complaint, unless otherwise noted.

owned by Kodak in Greece.  Complaint ¶ 497(A).  On November 8, Nicolo allegedly issued a check to Roeder drawn on an AVS bank account in the amount of $142,500.  The memo portion of the check bore the notation, "Fees – Kodak Park Greece."  Complaint ¶ 497(C).  Roeder allegedly deposited this check into one of her bank accounts on November 11.  Complaint ¶ 497(D).

Similarly, the complaint alleges that on various dates, Finnman directed the payment from Kodak to AVS of about $93,830 in furtherance of the scheme.  Complaint ¶¶ 81-95, 497(E).  Nicolo allegedly issued a check from AVS to Roeder on August 18, 1999, in the amount of $86,332, drawn on those funds, which Roeder again deposited into one of her accounts.  Complaint ¶¶ 497(G), (H).  Similar allegations are set forth concerning other payments to Roeder originating from payments by Kodak to Nicolo's businesses.  Complaint ¶¶ 497(I)-(QQ).

The complaint also alleges that Roeder herself transferred some funds to other scheme participants in furtherance of the scheme.  In particular, plaintiffs allege that on December 14, 2000, Roeder issued a check from one of her bank accounts to Camarata in the amount of $11,875, representing a kickback of money fraudulently obtained from Kodak.  Complaint ¶ 497(RR).

Plaintiffs also allege that Roeder paid kickbacks in the form of transfers of real estate to other scheme participants.  For example, the complaint alleges that in December 1996, South Slope Holding Corp. ("South Slope"), a business owned by Nicolo, conveyed real property in Yates County, New York to Roeder for no consideration, and that about three years later, Roeder conveyed a portion of that property to Schwab and his wife.  Complaint ¶ 497(ZZ-AAA).  Although the deed reflected that the Schwabs paid Roeder $20,000 for the property, plaintiffs allege that the property was worth far more than that, and that in May 2004, the Schwabs sold most of that same property

to a third party in an arm's-length transaction for $340,000, which was more indicative of the property's fair market value.  Complaint ¶ 497(BBB-DDD).

The complaint also alleges certain RICO predicate acts by Roeder.  For instance, plaintiffs allege that Roeder used the mails and interstate wires to send or receive checks representing proceeds of the scheme.  Complaint ¶ 497(JJJ, KKK).  Plaintiffs also allege that Roeder conducted financial transactions affecting interstate commerce in furtherance of the scheme, such as "laundering" funds derived from the scheme by depositing those funds in financial institutions, and making interstate payments to other participants in the scheme.  Complaint ¶ 497(LLL-NNN). Roeder is also alleged to have aided and abetted similar conduct by the other participants in the scheme.  Complaint ¶ 497(JJJ-QQQ).


DISCUSSION


At the outset, it is well to remember what issues are raised by filing a motion to dismiss, especially at the early stage of litigation.  This motion is addressed only to the sufficiency of the pleading.  It is not a vehicle to mine the merits of the case, including the strength of plaintiffs' claims.  Such an examination is reserved for trial or perhaps summary judgment.

The test now is whether there is any set of facts that could, if proven, support plaintiffs' claim or claims.  What occurred concerning defendant Roeder may well be nefarious, as plaintiffs suggest, or could merely be innocent, unknowing conduct.  All of that, though, is for another day and it is not to be resolved on a motion to dismiss.

**I. RICO Pleading Requirements**

To state a claim under RICO, a plaintiff must allege:  (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) causation of the injury by the violation of § 1962.  *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996). Section 1962 prohibits:  (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern or racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above.  18 U.S.C. § 1962; *see also GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995), *cert. denied*, 518 U.S. 1017 (1996).  The existence of a "pattern of racketeering activity" is therefore a requirement under any prong of § 1962.  *See id.* at 465.  To establish such a pattern, "a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity.  *Id.*; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

**II. Conducting or Participating in the Affairs of the Alleged Enterprise**

Plaintiffs' first cause of action alleges a violation of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

unlawful debt."   A RICO "enterprise" is defined to "include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity ... ."  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (quoting 18 U.S.C. § 1961(4)).  The alleged enterprise here ("the enterprise") is the association of the defendants for the purpose of executing the alleged scheme to defraud Kodak.

Roeder contends that plaintiffs have not adequately alleged that she "conducted or participated" in the affairs of the enterprise.  In that regard, both the Supreme Court and the Court of Appeals for the Second Circuit have made clear that "[f]or RICO purposes, simply establishing the presence of an enterprise is not enough.   Plaintiffs must also allege that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  *Id.* at 175-76 (citing 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993)).

In *Reves*, the Supreme Court explained that this requirement means that the defendant must have had "some part in directing [the enterprise's] affairs."  507 U.S. at 179.  The Court added that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise[;] but *some* part in directing the enterprise's affairs is required."  *Id.* (footnote omitted).

This requirement is often explained in terms of the "operation or management" test.  *First Capital*, 385 F.3d at 176.  "Simply put, 'one is liable under RICO only if he participated in the

operation or management of the enterprise itself.'"  *Id.* (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994)) (additional internal quotes omitted).

"In this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage."  *First Capital*, 385 F.3d at 176 (citations omitted).   Except where the facts and inferences to be drawn from them are "indisputabl[e]," a civil RICO defendant's actions taken to advance the enterprise's objectives typically "must be assessed by a fact-finder" to determine whether those actions, "assessed in the context of all the relevant circumstances, constitutes participation in the operation or management of the enterprise's affairs."  *United States v. Allen*, 155 F.3d 35, 42 (2d Cir. 1998).  I find that plaintiffs have cleared this "relatively low hurdle" in the case at bar as to defendant Roeder.

Roeder contends that plaintiffs' allegations suggest, at most, that she was a beneficiary of the enterprise, which is not enough.  In support of that contention, Roeder cites case law to the effect that "[t]he knowing receipt of fraudulently obtained funds does not constitute participation in the 'operation and management' of the enterprise."  *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F.Supp. 435, 450 (E.D.N.Y 1997) (citing *Amalgamated Bank of New York v. Marsh*, 823 F.Supp. 209, 220 (S.D.N.Y. 1993)).

While that may be true as a general principle, the complaint here at least alleges more than simply Roeder's receipt of fraudulently obtained funds.  Rather, as outlined above, plaintiffs allege that Roeder paid kickbacks to other participants in the scheme, at least in part by transferring some of the funds or property that she had received from the proceeds of the scheme.  If true, such activity could certainly be found to constitute conducting or participating in the affairs of the enterprise.

*See, e.g.*, *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996) (evidence supported finding that defendants agreed to participate in RICO conspiracy by, *inter alia*, agreeing to pay kickbacks in exchange for public-defender appointments), *cert. denied*, 519 U.S. 1118 (1997); *United States v. Lee Stoller Enterprises*, 652 F.2d 1313, 1320-21 (7th Cir.) (businessman paying kickbacks to sheriff in exchange for lucrative contracts held to participate in sheriff's office affairs), *cert. denied*, 454 U.S. 1082 (1981); *Twenty First Century L.P.I.. v. LaBianca*, 19 F.Supp.2d 35, 43 (E.D.N.Y. 1998) (fact issues existed as to whether contractor's payment of kickbacks as part of larger kickback scheme was sufficient to constitute participation in operation or management of RICO enterprise); *see also In re Sumitomo Copper Litigation*, 104 F.Supp.2d 314, 318 (S.D.N.Y. 2000) ("[t]he RICO statute has been repeatedly construed to cover both insiders as well as those peripherally connected to a RICO enterprise, particularly where the 'outsiders' are alleged to have engaged in kickbacks in order to influence the enterprise's decision") (quoting *Mason Tenders District Council Pension Fund v. Messera*, No. 95 Civ. 9341, 1996 WL 351250 at *6 (S.D.N.Y. June 26, 1996)).

In support of her motion to dismiss, Roeder contends that "there could be any number of explanations" why she might have written a particular check to Camarata, for example.  Defendant's Reply Memorandum of Law (Dkt. #131-1) at 5.  That may be so, but it is not plaintiffs' burden at the pleading stage to *prove* that a particular payment was a kickback, only to allege that it was.  *See Lumbermens Mut. Cas. Ins. Co. v. Maffei*, No. 3:03-cv-00262, 2006 WL 2032607, at *4 (D.Ala. July 18, 2006) ("While it may be highly questionable that plaintiff's allegations of the degree of participation by Goerig in the operation or management of the alleged enterprise will survive a motion for summary judgement, they are sufficient to withstand a motion to dismiss under Rule

12(b)(6)"); *Levine v. Torino Jewelers, Ltd.*, No. 05 Civ. 3159, 2006 WL 709098, at *4 (S.D.N.Y. Mar. 22, 2006) ("In order to survive a motion to dismiss, the complaint must simply make allegations that, if true, would *allow* a fact-finder to deem defendant liable for plaintiff's injury; it need not, however, show that no other interpretation of the facts is possible"); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 945 F.Supp. 1355, 1385 (D.Or. 1996) (allegation that "[e]ach defendant agreed with some or all of the other defendants to conduct or participate in the operation, conduct or management of the affairs of" RICO enterprise adequately supported RICO conspiracy claim to survive motion to dismiss; stating that "[a]t this stage of the litigation [the court] may not resolve the issue of whether all Defendants, in fact, agreed to participate in the management of the enterprise to commit racketeering activity").

### III. Commission of Predicate Acts

Roeder next argues that plaintiffs have not adequately pleaded any predicate acts on her part. "To show a RICO violation, the plaintiff must plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). The predicate acts must be acts of "racketeering activity," which, for purposes of the instant case, include mail fraud, wire fraud, interstate travel in aid of racketeering activity, money laundering, and interstate transportation of stolen property. *See* 18 U.S.C. § 1961(1) (enumerating predicate acts). An analysis of this issue requires separate consideration of the various alleged predicate acts alleged by plaintiffs.

**A. Money Laundering**

Plaintiffs allege that Roeder personally engaged in money laundering by funneling money both through federally insured financial institutions and among the other defendants, in order to conceal the unlawful nature of those funds, *i.e.*, the fact that they represented proceeds of a scheme to defraud.

The money laundering statutes, 18 U.S.C. §§ 1956 and 1957, proscribe a number of acts, several of which are relevant here. First, § 1956(a)(1)(A)(I) makes it an offense to conduct or attempt to conduct a financial transaction with knowledge that the property involved in the transaction represents the proceeds of unlawful activity, "with the intent to promote the carrying on of specified unlawful activity ... ." Similarly, § 1956(a)(1)(B)(I) makes it an offense to conduct or attempt such a transaction with knowledge that the transaction is designed in whole or in part "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ... ."[2]

Section 1957 makes it an offense to "knowingly engage[ ] or attempt[ ] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 ... ." Conspiring to engage in any of the above conduct is made punishable under § 1956(h).

As stated, the complaint alleges a number of specific occasions on which Roeder received, deposited, or transferred moneys or other property constituting proceeds of the scheme. Roeder,

---

[2]"Specified unlawful activity" includes any act constituting a RICO offense under 18 U.S.C. § 1961(1).  *See* 18 U.S.C. § 1956(c)(7)(A).

however, contends that the complaint does not adequately allege that she had knowledge of the illegal source of the funds.

"Money laundering is a specific intent crime, and it requires knowledge on the part of the defendant." *United States v. Gurolla*, 333 F.3d 944, ))) (9th Cir. 2003) (citing 18 U.S.C. § 1956(a)). Specifically, "money laundering requires a specific intent to launder the proceeds from a known illegal activity." *United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003). There are, then, two components of the state-of-mind element of such a claim: (1) that the defendant knew that the funds involved in the transaction were proceeds of some unlawful activity, *see United States v. Maher*, 108 F.3d 1513, 1525-28 (2d Cir. 1997); and (2) "that 'the defendant knew of the transaction's obfuscatory purpose.'" *United States v. Szur*, 289 F.3d 200, 220 (2d Cir. 2002) (quoting *Maher*, 108 F.3d at 1526).

In the case at bar, the complaint alleges that Roeder,

> knowing that the funds received [by her from other participants in the scheme] were the proceeds of the scheme to defraud which constituted unlawful activity, ... conducted and attempted to conduct financial transactions affecting interstate commerce involving those proceeds, knowing that the transactions were designed to and did conceal and disguise the nature, location, source, ownership or control of the proceeds of that unlawful activity, by repeatedly depositing those funds in financial institutions ... .

Complaint ¶ 497(MMM). Clearly, then, the complaint on its face does allege that Roeder knew that the funds were proceeds of an unlawful scheme to defraud, and that she deposited those funds in her bank account with the intent to conceal and disguise the unlawful nature of those funds. I find such allegations to be sufficient.

Defendant, however, claims that this is not enough. In particular, Roeder contends that because the money in question was allegedly obtained by fraud, and the purpose of the transactions

was to disguise that fact, the allegations of money laundering are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

After reviewing the relevant case law, including the authority cited by Roeder in support of that assertion, I am not persuaded that plaintiffs' allegations of money laundering are governed by Rule 9(b).  Even if they are, though, I find those allegations sufficient to survive a motion to dismiss.

First, Rule 9(b) says what it says:  that in "averments of fraud ..., the *circumstances constituting fraud* ... shall be pled with particularity."  Although the alleged money laundering here was related to the alleged fraud, Roeder's deposits of money and other financial transactions are not alleged to have been fraudulent in themselves.

The case law addressing this precise issue is not extensive, but it does not support Roeder's position.  In *Novomoskovsk Joint Stock Co. "Azot" v. Revson*, No. 95 Civ. 5399, 1997 WL 698192, at *4 n. 3 (S.D.N.Y. Nov. 7, 1997), relied upon by Roeder, the court did state that

> [t]o the extent that plaintiff purports to plead predicate acts of money laundering and of transactions with unlawful proceeds, ... these allegations are patently derivative of the fraud allegations, without which there could be no allegedly unlawful proceeds to launder or to use in financial transactions.  Thus, on the approach taken by these pleadings, fraud pleaded in accordance with the requirements of Rule 9(b) is still a prerequisite to stating a valid RICO claim in terms of these other predicates.

The court did not state, however, that the acts of *money laundering* had to be pleaded with particularity.  All that the court said was that the underlying *fraud* allegations had to meet the requirements of Rule 9(b).

- 12 -

Courts from within this circuit have also expressly stated that allegations of money laundering, even when related to fraud claims, are *not* subject to Rule 9(b), but rather to the notice-pleading standard of Rule 8(a).  For example, in *Madanes v. Madanes*, 981 F.Supp. 241 (S.D.N.Y. 1997), the court held on the defendants' motion to dismiss that the plaintiff had sufficiently alleged the defendants' commission of predicate acts of mail fraud, wire fraud and money laundering.  In so doing, the court recognized that "all of the alleged predicates of mail fraud, wire fraud and money laundering are related insofar as they served either to execute the fraud, or mask it." *Id.* at 255. Nevertheless, the court stated that although "[p]redicate acts of mail and wire fraud must be alleged with the particularity required by Rule 9(b) ..., [t]he heightened pleading requirements of Rule 9(b), ... apply only to claims sounding in fraud or mistake.  Accordingly, the money laundering allegations are assessed under the less stringent 'notice pleading' requirements of Rule 8(a)." *Id.* at 253 (citation omitted).  That view is consistent with other cases from within this circuit.  *See*, *e.g.*, *Levine*, 2006 WL 709098, at *4 n. 3 ("contrary to defendants' assertion, the heightened pleading requirements of Rule 9(b) do not apply to claims of money laundering; they apply 'only to claims of fraud or mistake'"; applying Rule 8(a) to allegations that defendants, through creation of phony invoices, funneled proceeds of fraudulent transactions to another party to those transactions) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)); *Ray v. General Motors Acceptance Corp.*, No. 92 CIV. 5043, 1995 WL 151852, at *5 (E.D.N.Y. Mar. 28, 1995) ("plaintiff need not plead money laundering with the same particularity as mail or wire fraud").

As stated, even judging plaintiffs' allegations under the more rigorous requirements of Rule 9(b), I find that they pass muster.  For one thing, the acts of money laundering themselves are

pleaded with particularity.  The complaint alleges the dates of the various transactions, the amounts of the funds or identity of the property transferred, and the parties to those transactions.

The only aspect that is not pleaded in great detail is Roeder's knowledge and intent.  The Second Circuit, however, has stated that even in allegations of fraud, "while the 'actual ... fraud alleged must be stated with particularity ... the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity." *Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (quoting *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)).  Courts "apply the more general standard to scienter for the simple reason that 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" *Id.* (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)).

The Court of Appeals has also stated that "[a]lthough it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." *First Capital*, 385 F.3d at 179 (footnote omitted). *See also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based")).

The allegations here are not lacking in detail, however.  The complaint alleges numerous transactions involving substantial sums of money between Roeder and the other defendants, during the period of the alleged scheme.  At least some of those transactions apparently involved funds that originated with Kodak; in one instance, Nicolo issued Roeder a check for $142,500 on which Nicolo had written the notation, "Fees – Kodak Park Greece."  Roeder allegedly deposited those funds in her own bank account.  In light of these allegations, and the relationship between Roeder and

Nicolo, plaintiffs have adequately pleaded facts upon which one could infer that (1) Roeder knew

of the unlawful source of these funds and (2) she understood that these transactions, including her

own acts of depositing or otherwise disposing of this money, were for the purpose of disguising or

concealing the unlawful nature of those funds.  *See Wight*, 219 F.3d at 92 (fraud complaint's

allegations of scienter passed muster under Rule 9(b) where "the underlying fraud itself is pled with

particularity"; noting, *inter alia*, "the personal relationships" among the defendants); *cf. Republic*

*of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (dismissing

RICO claims premised on allegation of money laundering where complaint did not allege that

defendants knew that money had been unlawfully diverted from Panamanian government or

otherwise derived from criminal activity).  At this stage, that is all that is required.  *See Madanes*,

981 F.Supp. at 253 ("the plaintiff does not have the burden of perfection, and thus a complaint may

survive despite its blemishes").  Whether plaintiffs ultimately carry the burden of proof on these

allegations is for another day.

## B. National Stolen Property Act and the Travel Act

For much the same reasons, I find that plaintiffs have adequately alleged as predicate acts

that Roeder violated the National Stolen Property Act ("NSPA"), and the Travel Act, 18 U.S.C. §

1952.  The NSPA provides in part that "[w]hoever transports, transmits, or transfers in interstate or

foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or

more, knowing the same to have been stolen, converted or taken by fraud ...," shall be guilty of a

crime.  18 U.S.C. § 2314.  The Travel Act makes it a crime to "travel[ ] in interstate or foreign

commerce or use[ ] the mail or any facility in interstate or foreign commerce," with the intent either

"to distribute the proceeds of any unlawful activity," or to otherwise promote, manage, establish,

carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful

activity ... ."  18 U.S.C. § 1952(a).  A violation of either the NSPA or the Travel Act can be a

predicate act supporting a RICO claim.  *See* 18 U.S.C. § 1961(1); *see, e.g., United States v. Coon*,

187 F.3d 888, 896 (8th Cir. 1999) (Travel Act); *State of Florida., Office of Att'y Gen'l, Dep't of*

*Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1303-04 (S.D.Fla. 2005) (NSPA);

*Welch Foods Inc. v. Gilchrist*, No. 93-CV-0641, 1996 WL 607059, at *4 (W.D.N.Y. Oct. 18, 1996)

(both).

　　　As with the money laundering allegations, Roeder's chief argument concerning these matters

is that plaintiffs have not sufficiently alleged knowledge and intent on her part.  For the reasons

already stated, I find that plaintiffs' allegations in that regard suffice at this stage.


**C. Mail and Wire Fraud**

　　　Plaintiffs also allege that Roeder engaged in acts of mail and wire fraud, and that she aided

and abetted the other defendants' acts of mail and wire fraud.  Roeder contends that these allegations

fail because there are no allegations connecting Roeder with the underlying fraud on Kodak.

　　　The mail fraud statute, 18 U.S.C. § 1341, makes it a crime to "[devise or intend to devise]

any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

pretenses, representations ⋯ [and] for the purpose of executing such scheme or artifice or attempting

so to do [use the mails]."  "[T]he essential elements of a mail fraud violation include:  (1) use of the

mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." *Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005).  Similarly, "the general elements of wire fraud under 18 U.S.C. § 1343 are (1) a scheme to defraud; (2) money or property as the object of the scheme; and (3) use of the wires to further the scheme."  *United States v. Gotti*, 459 F.3d 296, 330 (2d Cir. 2006).

The basis for Roeder's argument with respect to the predicate acts of mail and wire fraud is that her only alleged uses of the mails or wires occurred in connection with her alleged laundering of scheme proceeds; she is not alleged to have engaged in any activities that were fraudulent in themselves.  The law is clear, however, that plaintiff need not allege that a defendant's mail or wire communications contained false information or that they were otherwise fraudulent.  *See SKS Constructors, Inc. v. Drinkwine*, ___ F.Supp.2d ___, 2006 WL 2868313, at *6 (E.D.N.Y. 2006) ("where, as here, the predicate acts alleged are violations of the mail and wire fraud statutes, the pleader need only allege that the mail and wire fraud were in furtherance of a larger scheme to defraud, and the communications themselves need not have contained false or misleading information) (internal quotation marks omitted); *see also Schmuck v. United States*, 489 U.S. 705, 715 (1989) (stating that "'innocent' mailings–ones that contain no false information–may supply the mailing element").

In addition, courts have held that acts of money laundering can be performed in an effort to "further" a scheme to defraud, which, as stated, is one of the elements of mail and wire fraud.  *See*, *e.g.*, *United States v. Williamson*, 339 F.3d 1295, 1302 (11th Cir. 2003) (affirming conviction for money laundering, and stating that "the depositing and cashing of checks that represented the

proceeds of the mail fraud promoted ... the Appellants' ... ongoing and future [fraudulent] activity, and that "the financial transactions were in furtherance of the ongoing [fraud] conspiracy offense"); *United States v. Cordo*, 324 F.3d 223, 232 (3d Cir. 2003) (stating that "[h]ere the acts of money laundering and mail fraud were all 'in furtherance of a single fraudulent scheme' to defraud"); *United States v. Wilson*, 98 F.3d 281, 283 (7th Cir. 1996) (stating, in connection with holding that defendant's convictions for mail fraud and money laundering were "closely related counts" which should have been grouped under applicable Sentencing Guideline, that "the money laundering took place in an effort to conceal the fraud and keep the entire scheme afloat"); *Choimbol v. Fairfield Resorts, Inc.*, 428 F.Supp.2d 437, 446 (E.D.Va. 2006) (plaintiffs adequately alleged predicate acts of "money laundering that Fairfield, along with others, executed in furtherance of the overall scheme to defraud Plaintiffs"); *Mezzonen, S.A. v. Wright*, No. 97 CIV. 9380, 1999 WL 1037866, at *8 (S.D.N.Y. Nov. 16, 1999) (noting that two "transfers [of money] are specified in the Complaint as constituting acts of money laundering in furtherance of the scheme to defraud Mezzonen," and concluding that plaintiff had adequately pleaded defendants' involvement in pattern of racketeering activity).

Furthermore, "[t]he plaintiff does not need to prove that each defendant personally used the mails but only that the defendant acted 'with knowledge that the use of the mails will follow in the ordinary course of business, or [acted in circumstances] where such use can be reasonably foreseen.'" *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (quoting *United States v. Maze*, 414 U.S. 395, 399 (1974)); *accord SKS Constructors*, 2006 WL 2868313, at *6). By participating in the overall scheme by means of her alleged role as money launderer,

Roeder may fairly be alleged to have engaged in mail and wire fraud through other defendants' reasonably foreseeable acts.[3]

## IV. Causation

Roeder also contends that plaintiffs have failed to allege causation. Specifically, she argues that because her alleged money laundering and other predicate acts occurred after Nicolo gave her checks representing funds that had already been paid by Kodak, Roeder's acts could not have caused any injury to Kodak.

"Because a plaintiff must show injury 'by the conduct constituting the violation' of RICO, the injury must be caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To have standing to sue under RICO, then, plaintiffs must allege facts showing that defendants' RICO violations proximately caused their injuries. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003). *See also Anza v. Ideal Steel Supply Corp.*, ___ U.S. ___, 126 S.Ct. 1991, 1998 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries").

---

[3]In any event, my findings as to plaintiffs' allegations that Roeder committed predicate acts of money laundering render it unimportant whether they have adequately alleged predicate acts of mail or wire fraud as well. That is particularly so because the only acts that Roeder is alleged to have personally performed are the acts of money laundering. If the money laundering allegations are sufficient, there is no need to consider whether the fraud allegations are also sufficient. If the money laundering allegations are *in*sufficient, the fraud allegations would necessarily fail as well.

There is authority that a "predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act." *Vicon Fiber Optics Corp. v. Scrivo*, 201 F.Supp.2d 216, 219 (S.D.N.Y. 2002) (concluding that it was "logically impossible that [plaintiff employer, which sued some of its employees and officers under RICO based on defendants' alleged submission of fraudulent claims for travel and entertainment expenses] could have relied on wire transmissions to the SEC that post-dated the last act of corporate pilferage"); *see also Leung v. Law*, 387 F.Supp.2d 103, 122 (E.D.N.Y. 2005) (dismissing RICO claims in part because "the defendants' alleged failure to report cash transactions, the omission underlying Leung's money laundering claims, may have concealed, but did not cause, Leung's losses").

"Contrary to [Roeder's] suggestion, however, courts have not drawn a clear line between acts of proximate causation that precede an injury and acts of 'mere[ ]' concealment that follow it." *Levine*, 2006 WL 709098, at *4.  In *Levine*, for example, the court held that the plaintiff's "allegations regarding causation [we]re sufficient to confer standing to bring a RICO claim against defendants" based in part on allegations that the defendants had engaged in laundering of funds embezzled from the plaintiff.  In doing so, the court stated that

> [i]t [wa]s at least conceivable that defendants' actions assisted [the person who had embezzled the money] in covering her tracks and thereby helped her steal more from plaintiff than she otherwise would have.  If this is true, then defendants' acts would have been "a substantial factor in the sequence of responsible causation," and plaintiff's injury would have been "reasonably foreseeable or anticipated as a natural consequence."

*Id.*  Other courts have reached similar holdings, particularly where the defendants were alleged to have been involved in concealment in order to help perpetuate an ongoing scheme.  *See*, *e.g.*, *Maiz*

*v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001) (stating, in context of RICO action by investors against individuals who orchestrated allegedly fraudulent real estate venture, that "Congress has recognized that money laundering and other post-investment offenses may constitute predicate acts causing racketeering injury for which damages may be recovered under § 1964," and that "[i]f Defendants' logic were correct, it would be difficult to imagine how these statutory offenses could *ever* serve as predicate acts in civil RICO cases") (citing 18 U.S.C. § 1961(1)(B)); *Lugosch v. Congel*, 443 F.Supp.2d 254, 272 (N.D.N.Y. 2006) (denying summary judgment for defendants in RICO action where plaintiffs had presented evidence that defendants' allegedly misleading mailings and wirings "concealed [their partnership's] fraudulent conduct ... and made possible the continuation and expansion of the fraudulent scheme"); *Mezzonen*, 1999 WL 1037866, at *5-6 (holding that plaintiff adequately stated RICO claims against defendants based on concealment of fraud, including money laundering); *American Arbitration Ass'n, Inc. v. DeFonseca*, No. 93 CIV. 2424, 1996 WL 363128, at *6 (S.D.N.Y. June 28, 1996) ("The complaint envisions a two-tiered scheme of embezzlement and money laundering.  Both elements of the scheme were integral to its success.  Thus, by virtue of their involvement on the money laundering side, the moving defendants played an essential role in the scheme, and their acts were 'a substantial factor in the sequence of responsible causation'") (quoting *Standardbred Owners Ass'n v. Roosevelt Raceway*, 985 F.2d 102, 104 (2d Cir. 1993)); *cf. Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774 (9th Cir. 2002) (defendant bank incurred no RICO liability because its employee's money laundering of stolen funds did not proximately cause plaintiff's loss, which occurred as a result of a one-time armed robbery).

In the case at bar, I believe that plaintiffs have satisfied RICO's causation requirement as to Roeder, and that they therefore have standing to bring their RICO claims against her. Given that the alleged scheme lasted over a period of several years, *see* Complaint ¶¶ 55-71, it is certainly conceivable that Roeder's alleged acts of money laundering had the effect not simply of concealing a completed crime, but allowed it to continue for longer than it otherwise would have. That is sufficient at this stage. *See Levine*, 2006 WL 709098, at *4 ("Whether or not plaintiff can prove that defendants' actions proximately caused his losses is an issue for a later date. Levine's allegations regarding causation are sufficient to confer standing to bring a RICO claim against defendants"). In addition, Roeder's alleged interstate payments to other scheme participants could likewise have helped keep the scheme afloat. *See Metropolitan Transp. Auth. v. Contini*, No. 04-CV-0104, 2005 WL 1565524, at *6 (E.D.N.Y. July 6, 2005) (stating that defendant City Check, which was alleged to have provided a conduit for the distribution of the proceeds of the conspiracy "played an essential role in the scheme to embezzle millions of dollars from the MTA. Without [City Check's manager], at least some of the proceeds could not have been converted to cash and distributed to the participants. If people did not get paid, the scheme would not have continued. Thus, City Check was a 'substantial factor' in plaintiff's loss").

## V. RICO Conspiracy Claim

Roeder also asserts that plaintiffs have failed to plead facts supporting a RICO conspiracy claim against her under 18 U.S.C. § 1962(d). To state such a claim, plaintiffs must allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance

of the common purpose of a RICO enterprise." *Colony at Holbrook, Inc. v. Strata, Inc.*, 928 F.Supp. 1224, 1238 (E.D.N.Y. 1996)).   An individual may be liable only if he or she knew of the conspiracy's goals and agreed to facilitate them.   *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003).   To allege a § 1962(d) claim, then, "plaintiff[s] must allege as to each co-conspirator an agreement to join in the conspiracy, acts of each co-conspirator in furtherance of the conspiracy, and knowing participation in that conspiracy." *Knoll v. Schectman*, No. 02-CV-692, 2006 WL 839428, at *6 (W.D.N.Y. Mar. 28, 2006); *accord Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F.Supp.2d 514, 541 (S.D.N.Y. 2001).

The basis for Roeder's motion to dismiss this claim is that plaintiffs have not sufficiently alleged that she was aware of the scheme.   She contends that on the facts alleged, Roeder could well have believed that all of the payments involved, whether from Kodak to Nicolo, from Nicolo to Roeder, or involving some other defendants, were perfectly lawful and legitimate. These explanations, though, are not to be resolved on this motion.

For much the same reasons that I have found plaintiffs' allegations sufficient as to the substantive RICO claims against Roeder, I find them adequate as to the RICO conspiracy claim as well.   As stated earlier, at this stage plaintiffs do not have to allege facts that are susceptible to only one interpretation leading to a finding of liability; their burden is to plead facts which, if proven, would *permit* a jury to find Roeder liable.   *Levine*, 2006 WL 709098, at *4.   All that is required is that plaintiffs "allege some factual basis for a finding of a conscious agreement among the defendants," and I believe that plaintiffs have done so here.   *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 827 (S.D.N.Y. 2005) (quoting *Hecht*, 897 F.2d at 26 n. 4); *see*

*Mezzonen*, 1999 WL 1037866, at *12 (in light of court's findings that plaintiff had adequately pleaded the involvement of each moving defendant under 1962(c), court also denied motion to dismiss RICO conspiracy claim under § 1962(d); allegations supporting § 1962(c) claim also supported finding that plaintiff had adequately alleged that defendants adopted the goal of furthering or facilitating the criminal endeavor).

## VI. Claims Under State Law[4]

### A. Fraud

Count 3 of the complaint asserts a common-law fraud claim against all the defendants. Count 17 asserts a claim against Roeder for aiding and abetting fraud.

"Under New York law, '[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *Lerner*, 459 F.3d at 291 (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003)). "To establish liability for aiding and abetting fraud, the plaintiffs must show '(1) the existence of a fraud;

---

[4]The tenth and eleventh causes of action appear to assert claims for breach of contract against all the defendants. Plaintiffs have not addressed these claims in their papers in opposition to Roeder's motion to dismiss, however, and I agree with Roeder that they must be dismissed as against her for failure to state a claim, since there are no allegations that Roeder was a party to any contract with plaintiffs. *See Marks v. New York Univ.*, 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999) (elements of a breach of contract claim in New York are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach); *see also Murphy v. Sr. Investigator Neuberger*, No. 94 Civ. 7421, 1996 WL 442797, at *14 (S.D.N.Y. Aug. 6, 1996) (dismissing contract claim where complaint "fails to identify what contracts were breached and how defendants breached such contracts").

(2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'" *Lerner*, 459 F.3d at 292 (quoting *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Franco v. English*, 210 A.D.2d 630, 633 (3d Dep't 1994) (requiring "nexus between the primary fraud, [defendant's] knowledge of the fraud and what it did with the intention of advancing the fraud's commission").

I find that plaintiff's fraud claim under New York law must be dismissed as to Roeder, but not the aiding-and-abetting claim. As stated with respect to the RICO claims, there is no allegation that Roeder herself made any false representations. The basis for the allegations of predicate acts of mail and wire fraud was that Roeder used the mails and wires to conduct transactions in furtherance of the overall scheme to defraud. While that may be sufficient to meet the RICO predicate-act requirement, it does not state a direct fraud claim against Roeder. *See Moses v. Martin*, 360 F.Supp.2d 533, 547 (S.D.N.Y. 2004) ("The mail and wire fraud statutes are broader than a claim of common law fraud").[5]

Essentially for the reasons stated with respect to the RICO claims, however, I find that plaintiffs have adequately pleaded a claim against Roeder for aiding and abetting fraud under New York law. Plaintiffs' allegations sufficiently allege Roeder's knowledge of the fraudulent scheme and her efforts to further it. *See Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 246-47 (S.D.N.Y.

---

[5]I note that plaintiffs' brief in opposition to Roeder's motion to dismiss does not discuss the common-law fraud claim, though it does address the aiding-and-abetting claim.

1996) (aiding-and-abetting liability requires "actual knowledge" of wrongdoing and conscious sharing in that wrongdoing), *aff'd*, 152 F.3d 918 (2d Cir. 1998).

## B. Conversion

The fourth cause of action asserts a claim for conversion against all the defendants. The eighteenth cause of action asserts a claim against Roeder for aiding and abetting conversion.

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)). Where the property in question is money, the general rule is that "funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank." *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998) (quoting *Chemical Bank v. Ettinger*, 196 A.D.2d 711 (1st Dep't 1993)); *see also Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y. 2004) (money may be subject to a conversion action so long as it is held in a "specific, identifiable fund and [subject to] an obligation to return or otherwise treat in a particular manner the specific fund in question") (quotation omitted). Roeder contends that plaintiffs have not sufficiently identified any such fund.

There is authority, however, that "'funds of a specific, named bank account are sufficiently identifiable' to support a conversion claim." *Newbro v. Freed*, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006) (quoting *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995); *see also Payne*

*v. White*, 101 A.D.2d 975, 976 (3d Dep't 1984) (lower court erred in dismissing conversion claim based on unidentifiability of the funds in question where "the funds at issue ... were clearly identifiable as the balance of a specific bank account"). Plaintiffs have identified the accounts and check numbers of the monies at issue. *See* Complaint ¶ 497.

In addition, as the court in *Newbro* explained, many of the cases in which courts have found funds deposited in general bank accounts to be insufficiently identifiable to support a conversion claim involve claims against the banks themselves. *Newbro*, 409 F.Supp.2d at 395 (citing cases). In such cases, the funds, upon being deposited with the bank, became an asset of the bank, and the bank, in turn, became indebted to the depositor. The result is that "[o]rdinarily, when the bank has misused the depositor's money, the depositor's remedy lies in contract–not tort." *Id.* Since the present action does not involve a claim against a bank, but against a third party, "the rationale underlying courts' reluctance to permit customers to proceed against the depository institution on a conversion theory does not apply here." *Id.* Accordingly, Roeder's motion to dismiss the conversion claim is denied.

I also deny the motion to dismiss the aiding-and-abetting conversion claim. "New York law permits a claim for aiding and abetting conversion where the plaintiff can prove '(1) the existence of a violation committed by the primary (as opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in achievement of the violation.'" *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc. Lesavoy v. Lane*, 304 F.Supp.2d 520, 526 (S.D.N.Y. 2004) (quoting *Lesavoy*

*v. Lane*, 304 F.Supp.2d 520, 526 (S.D.N.Y. 2004), *aff'd in part, vacated on other grounds in part*, 170 Fed.Appx. 721 (2d Cir. 2006)).

Again, Roeder's argument is that plaintiffs' allegations do not demonstrate her knowledge of the primary violation.  For the reasons already given, I find that this argument fails.


**C. Unjust Enrichment**

The fifth cause of action asserts a claim of unjust enrichment against all the defendants. Roeder contends that this claim must be dismissed as to her because there are no allegations showing that she was enriched at Kodak's expense.  Specifically, Roeder argues that the allegations that Nicolo fraudulently obtained money from Kodak, and then paid money to Roeder do not show a direct or close enough connection between Kodak and Roeder to support a claim of unjust enrichment as to her.

"Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 203 n. 8 (2d Cir. 2004) (citing *Lake Minnewaska Mountain Houses, Inc. v. Rekis*, 259 A.D.2d 797 (3rd Dep't 1999)).  "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)).

"Whether New York law imposes a nexus requirement to state a claim for unjust enrichment is unsettled." *Bildstein v. MasterCard International, Inc.*, No. 03 Civ.9826I, 2005 WL 1324972,

at *5 (S.D.N.Y. June 6, 2005).  *Compare Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, 317 F.Supp.2d 301, 333-34 (S.D.N.Y. 2003) (claims for unjust enrichment "clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship"), *with Dreick Finanz AG v. Sun*, No. 89 Civ. 4347, 1989 WL 96626, at *4 (S.D.N.Y. Aug. 14, 1989) (unjust enrichment does not require "plaintiff and defendants to have had direct dealings with one another"); *see also Cox v. Microsoft Corp.*, 8. A.D.3d 39, 40-41 (1ˢᵗ Dep't 2004) (direct dealing not required to state a claim for unjust enrichment).

Particularly in cases in which the plaintiff claims to have been defrauded out of money (as opposed to chattels or real property), at some point the relationship between the plaintiff and a particular defendant "may be too attenuated to support an unjust enrichment claim," *In re Canon Cameras*, No. 05 Civ. 7233, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006).  Here, however, plaintiffs allege that Roeder knowingly furthered the scheme to defraud by means of money laundering, and that in so doing she was enriched through her receipt of substantial sums of money. In my view, that is enough for this claim to survive a motion to dismiss.  *See id.* (whether defendant received any benefit from plaintiffs' purchases of its cameras, so as to support a claim of unjust enrichment, was a question of fact not properly resolved on a motion to dismiss).


### D. Aiding and Abetting Breach of Fiduciary Duty

The fourteenth cause of action alleges a claim against Roeder for aiding and abetting a breach of fiduciary duty by Camarata.  "Under New York law, [a] plaintiff seeking to establish a cause of action for aiding and abetting a breach of fiduciary duty must show:  '(1) the existence of

a ... violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Design Strategy, Inc. v. Davis*, ___ F.3d ___, 2006 WL 2990223, at *17 (2d Cir. 2006) (quotation omitted).

Roeder's argument with respect to this claim is that plaintiffs have not sufficiently alleged her knowledge of the scheme in which Camarata's breach of his fiduciary duties played a part. For the reasons already given with respect to the other claims involving a requirement of scienter, Roeder's motion to dismiss this claim is denied.


### E. Constructive Trust and Accounting

The fifteenth and sixteenth causes of action seek the imposition of a constructive trust and an accounting with respect to the monies received by defendants from Kodak as a result of the alleged scheme. Roeder contends that plaintiffs have set forth no basis for such remedies against her.

Under New York law, a party seeking to impose a constructive trust must meet four elements: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004). "[A]lthough these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999) (quotation omitted).

Similarly, under New York law, a plaintiff seeking an accounting "must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary by the defendant." *Bezuszka v.. L.A. Models, Inc.*, No. 04 Civ. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006). There is also authority, however, that an accounting may be available where "special circumstances" warrant equitable relief in the interests of justice. *Matter of Fugazy Exp., Inc.*, 124 B.R. 426, 432 (S.D.N.Y. 1991) (citing *Grossman v. Laurence Handprints-N.J., Inc.*, 90 A.D.2d 95 (2d Dep't 1982)), *appeal dismissed*, 982 F.3d 769 (2d Cir. 1992).

Although I have my doubts about whether plaintiffs will be able to establish these claims against Roeder, I will not dismiss them at this time. As Roeder recognizes, these are more in the nature of equitable remedies than separate causes of action, *see* Roeder's Memorandum of Law (Dkt. #110) at 22, but I see no prejudice to Roeder by allowing plaintiffs to pursue these remedies at this time or allowing them to remain in the complaint.

## F. Fraudulent Conveyance

Causes of action 19 through 22 assert fraudulent-conveyance claims against Roeder, based on Nicolo's transfers of money and real property to her, allegedly without fair consideration.

Article 10 of the New York Debtor and Creditor Law provides that certain types of conveyances are deemed fraudulent as to creditors, and are subject to being set aside. In order to state a claim for fraudulent conveyance under these provisions, a plaintiff must allege that the conveyance was made without fair consideration and that: (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer (Debt. & Cred. L. § 273); (2) as a

result of the transfer, the transferor is left with unreasonably small capital to conduct its business (Debt. & Cred. L. § 274); or (3) as a result of the transfer, the transferor intends or believes that it will incur debt beyond its ability to pay (Debt. & Cred. L. § 275).  In addition, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors," irrespective of whether fair consideration was paid.  Debt. & Cred. L. § 276.

Roeder contends that these claims are should be dismissed because they are supported only by conclusory allegations.  I disagree.  First, the claims under §§ 273-75 are sufficient to satisfy the notice pleading standard of Rule 8.  *See Federal Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04 CV 4971, 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006).

In addition, the claim under § 276 meets the requirements of Rule 9(b).  *See In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (fraudulent-conveyance claim under § 276 must be pleaded with specificity).  The complaint identifies the particulars of the transactions in question, *see* Complaint ¶¶ 593-98, and the complaint read as a whole alleges enough facts to support an inference of fraudulent intent.  *See Drenis v. Haligiannis*, 452 F.Supp.2d 418, 429 (S.D.N.Y. 2006) (fraudulent intent may be inferred from circumstantial evidence, including "the inadequacy of consideration received, the close relationship between the parties to the transfer, ... suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened"); *see also Eclaire Advisor Ltd. v. Daewoo Engineering & Construction Co., Ltd.*, 375 F.Supp.2d 257, 268-69 (S.D.N.Y. 2005) (calling these types of inferences "badges of fraud").

**G. Civil Conspiracy**

The twenty-third cause of action asserts a civil conspiracy claim against Roeder. New York law recognizes such a claim only if it is connected to a separate underlying tort. See *Alexander & Alexander Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort") (internal quotations and citations omitted). Thus, a "plaintiff may plead the existence of a conspiracy ... to demonstrate that each defendant's conduct was part of a common scheme." *World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F.Supp.2d 514, 532-533 (S.D.N.Y. 2001) (citation omitted). To make out a claim of civil conspiracy, plaintiffs must allege the underlying tort, plus four additional elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. *Fisk v. Letterman*, 424 F.Supp.2d 670, 677 (S.D.N.Y. 2006).

Roeder contends that this claim must be dismissed because plaintiffs have not alleged facts suggesting that Roeder consciously agreed to participate in any conspiracy to commit any of the other torts alleged in the complaint. This motion is denied as well. For the reasons stated above, plaintiffs have adequately pleaded Roeder's knowing participation in a scheme to defraud Kodak. See *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F.Supp.2d 485, 504 (S.D.N.Y. 2003) (stating that where plaintiffs had adequately plead fraud by non-party Enron, and had "alleged that Defendants knowingly participated in Enron's fraudulent accounting scheme ..., Plaintiffs' allegations of conspiracy serve[d] to connect Defendants' conduct 'with an otherwise actionable tort'").

**CONCLUSION**

The motion to dismiss the complaint by defendant Constance Roeder (Dkt. #110) is granted in part and dismissed in part.  Plaintiffs' third cause of action, asserting a claim for fraud, and their tenth and eleventh causes of action, asserting claims for breach of contract, are dismissed as to defendant Roeder.  In all other respects, defendant's motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 6, 2006.